An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-241

NORTH CAROLINA COURT OF APPEALS

Filed: 21 October 2014

REBECCA CHAPMAN DIGH, (now
OSBORNE),
    Plaintiff,

v.                                      Burke County
                                        No. 98 CVD 89
WILLIAM WALLACE DIGH,
    Defendant.


Appeal by defendant from orders entered 28 August 2013 and 20 December 2013 by Judge Sherri W. Elliott in Burke County District Court. Heard in the Court of Appeals 27 August 2014.

*Richard W. Beyer for appellee.*

*KUEHNERT & JONES, PLLC, by Daniel A. Kuehnert, for appellant.*


ELMORE, Judge.


William Wallace Digh (defendant) appeals from the trial court's denial of his Rule 60(b)(4) motion and his Rule 59 motion. Defendant argues on appeal that he was not afforded due process prior to the entry of the 2009 Domestic Relations Order. After careful consideration, we affirm.

## I.    Background

The facts of this case are largely undisputed and are derived from an earlier opinion filed in this matter, *Digh v. Digh*, COA12-506, 2012 WL 6590509 (N.C. Ct. App. Dec. 18, 2012). Rebecca Chapman Digh (plaintiff) and defendant were married on 24 October 1976 and subsequently separated on 1 November 1995, after almost twenty years of marriage. Two children were born of the parties during their marriage, both of whom are now adults.

On 26 February 1998, a Consent Judgment (1998 Judgment) was entered with respect to equitable distribution of the marital property. Defendant was a participant in the State of North Carolina Teachers' and State Employees' Retirement System, and a portion of his retirement benefits was subject to equitable distribution. In the 1998 Judgment, the trial court made the following findings of fact with regard to the portion of defendant's retirement benefits designated to plaintiff:

> (B) That the Plaintiff and Defendant have agreed that the Plaintiff shall be designated as the alternate payee of retirement benefits equal to fifty percent (50%) of the Defendant/Plan Participant's account which can be attributed to that amount which accrued from the date of the parties' marriage (October 24, 1976) to the date of their separation (November 1, 1995), plus all interest accruing on the alternate payee's portion from the date of the parties' separation through the date the

funds are disbursed to the alternate payee.

(C) That the Plan Administrator is directed to make monthly payments directly to the Plaintiff of the amount which equals fifty percent (50%) of the Defendant's account, which can be attributed to that amount which accrued from the date of the parties' marriage (October 24, 1976) to the date of their separation (November 1, 1995), plus all interest accruing on the alternate payee's portion from the date of the parties' separation through the date the funds are disbursed to the alternate payee.

On the foregoing findings of fact, the trial court similarly concluded as a matter of law, the following:

(B) That the Plaintiff . . . shall be designated as the alternate payee of retirement benefits equal to fifty percent (50%) of the Defendant/Plan Participant's account which can be attributed to that amount which accrued from the date of the parties' marriage (October 24, 1976) to the date of their separation (November 1, 1995), plus all interest accruing on the alternate payee's portion from the date of the Parties' separation through the date the funds are disbursed to the alternate payee.

(C) That the Plan Administrator is directed to make monthly payments directly to the Plaintiff of the amount which equals fifty percent (50%) of the Defendant's account, which can be attributed to that amount which accrued from the date of the parties' marriage (October 24, 1976) to the date of their separation (November 1, 1995), plus all interest accruing on the alternate

> payee's portion from the date of the
> parties' separation through the date the
> funds are disbursed to the alternate payee.

Both plaintiff and defendant signed the 1998 Judgment, and the 1998 Judgment was notarized.

At the end of 2008, defendant retired. In February 2009, defendant received a letter from plaintiff's counsel dated 5 February 2009. In the letter, counsel stated the following:

> Your ex-spouse, [Plaintiff], has retained this office to make sure she receives her share of retirement benefits as provided by the Judgment entered February 26, 1998[.] . . . Since your retirement at the end of 2008, [Plaintiff] was to begin receiving her share of your retirement when you did and I would calculate that to be about 28% of your retirement benefit. I do not know if you have received your first State retirement check but if it was not reduced by the amount [Plaintiff] is to receive, you will owe her that amount of each and every month that you receive the entire retirement amount rather than that amount reduced by [Plaintiff's] share. I have sent you this letter so you are aware that you need to pay this amount to [Plaintiff] if you are receiving the total benefit and that if it is not paid to her we will be forced to return to court.

On 16 February 2009, the trial court entered a Domestic Relations Order (2009 Order) designating the following as Plaintiff's marital portion:

4. The marital interest of the nonmember ex-spouse in the, member's benefits payable by the Retirement System shall be calculated as follows: fifty per cent [sic] (50%) of the amount determined by multiplying the member's total benefit by a fraction, the numerator of which shall be the total months of creditable service earned during the marriage, including creditable service purchased during the marriage, and the denominator of which shall be the member's total number of months of creditable service at the time of retirement or of a withdrawal of accumulated contributions.

5. The formula set forth in Finding of Fact 4 shall be applied to all retirement benefits payable to the member of this his designated survivor(s) under any option contained in G.S. 135-5(g), as well as to any return of accumulated contributions made pursuant to G.S. 135-5(f) or G.S. 135-5(gl).

Based on the foregoing and other findings of fact the trial court made the following conclusions of law:

5. The Retirement System shall distribute to the non-member ex-spouse her marital share of the member's benefits payable by the Retirement System, calculated pursuant to the provisions of Finding of Fact 4 and 5 of this order. In the event that a return of accumulated contributions becomes payable pursuant to G.S. 135-5(f) or G.S. 135-5(gl), then the Retirement System shall distribute to the nonmember ex-spouse her marital share of such a return of accumulated contributions, calculated pursuant to the provisions of Finding of Fact 5 of this order.

6. The non-member ex-spouse shall receive her share of the member's retirement benefits at such time and in such payment form as said benefits are paid to the member.

. . .

10. A copy of this Order shall be served upon the Administrator of the Teachers' and State Employees' Retirement System of North Carolina, and the Administrator shall determine, within a reasonable period of time, whether this Order can be administered by the Retirement System. This Order shall take effect immediately and shall remain in effect until further orders of this Court. Until this Order is accepted by the Retirement System, this Court retains jurisdiction to modify this Order as may be required or necessary.

On 9 July 2009, defendant filed a motion in the cause (2009 Motion) in which he petitioned the court to modify the 2009 Order. However, on 18 February 2011, defendant voluntarily dismissed, without prejudice, his 2009 Motion. On 17 May 2011, defendant filed a second motion in the cause (2011 Motion) in which he petitioned the court for a second time to modify the 2009 Order. Defendant again argued that "[d]efendant was lead to believe that a limited amount of his retirement would be transferred to the Plaintiff amounting [to] fifty percent (50%) of the retirement which was paid in between October 24, 1976, and November 1, 1995." Based on the foregoing, defendant

contended that "the division [of the retirement account] should have been on the active portion of the retirement accumulated during the marriage between the dates specified in the [1998 Judgment] and nothing more." Defendant also argued that "[p]laintiff failed to take reasonable steps at or near the time of the entry of the [court's] Order [to] have the portion of the retirement transferred into her individual name for payment[.]" Defendant prayed that the court modify the 2009 Order, on the basis of a mutual mistake of fact, to reflect the agreement reached by the parties and memorialized in the 1998 Judgment. On 12 December 2011, the trial court entered an order denying defendant's 2011 Motion. Defendant appealed to this Court. We affirmed the order of the trial court denying defendant's 2011 Motion on the basis that defendant only established a unilateral mistake, not a mutual one. *See id*.

Defendant subsequently filed a Rule 60(b)(4) motion on 12 April 2013, moving the trial court to declare as void the following: (1) the 2009 Order and (2) the portion of the 1998 Judgment dealing with the division of property. In an order filed 28 August 2014, the trial court found that the 2009 Order "did not contain any provision different from the 1998 [Judgment] other than stating the correct calculation of the

Plaintiff's interest in the Defendant's State retirement[.]" It concluded as a matter of law that defendant's motion was without merit, as the 1998 Order called for the entry of a Qualified Domestic Relations Order, if necessary, or if required by the Plan Administrator of the State of North Carolina Teachers' and State Employees' Retirement System.

Defendant filed a Rule 59(a) motion for a new trial and Rule 59(e) motion to alter or amend the 28 August 2013 judgment. The trial court denied defendant's Rule 59 motions, concluding that no grounds exist on which to grant these motions. Defendant now appeals to this Court.

## II. **Analysis**

Defendant seeks relief on the basis that the 2009 Order is "void *ab initio*" because the due process notice requirement was not met. We disagree.

Here, the trial court neither lacked subject matter jurisdiction nor was there a violation of defendant's right to due process. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." *Mathews v. Eldridge*, 424 U.S. 319, 333, 47 L. Ed. 2d 18, 32 (1976) (citation and quotation omitted). "Generally, due process requires notice and a hearing before the government may

deprive an individual of liberty or property." *State v. Poole*, ___ N.C. App. ___, ___, 745 S.E.2d 26, 34 (2013) *writ denied*, *review denied*, *appeal dismissed*, ___ N.C. ___, 749 S.E.2d 885 (2013).

On these particular facts, notice to defendant prior to the entry of the 2009 Order was not a prerequisite for the Order to be binding on defendant. Defendant was afforded due process at the time he consented to the terms of the 1998 Judgment. Although defendant contends in his Rule 60(b)(4) motion that he "did not have notice or an opportunity to be heard by the court on the substance of the 1998 [Judgment][,]" we are not persuaded. Defendant signed the 1998 Judgment before a notary, and the 1998 Judgment specifically states "WE CONSENT" above the signature line. The terms of the 1998 Judgment clearly provide for the entry of a Qualified Domestic Relations Order if required by the Plan Administrator of the State of North Carolina Teachers' and State Employees' Retirement System, and it specifically directs the Plan Administrator to make monthly payments "directly to the Plaintiff of the amount which equals fifty percent (50%) of the Defendant's account" from the date of the parties' marriage to the date of their separation. By stipulating to these terms, defendant cannot now argue that the

trial court erred in entering the 2009 Order, which is premised entirely on the agreed-upon terms set forth in the 1998 Judgment. *See e.g.*, *Holden v. John Alan Holden*, 214 N.C. App. 100, 112, 715 S.E.2d 201, 209 (2011) (concluding that when a consent order clearly stated that the plaintiff was to pay the defendant a sum certain, and the plaintiff stipulated that she failed to do so, the plaintiff cannot argue that the trial court erred in ordering the plaintiff to pay).

In sum, a review of the record reveals that defendant agreed to the terms set forth in the 1998 Judgment, and the calculation of plaintiff's interest in defendant's retirement contributions and benefits earned during the marriage and prior to the date of separation set forth in the 2009 Order is correct and reflects the agreed-upon terms. There is insufficient evidence in the record for us to determine whether a copy of the 1998 Judgment was served upon the State of North Carolina Teachers' and State Employees' Retirement System. Regardless, the 2009 Order provides that a copy of the 2009 Order shall be served upon the Plan Administrator. We find this to be sufficient. We overrule defendant's second argument—that plaintiff's failure to serve the North Carolina Teachers' and State Employees' Retirement System a copy of the 1998 Judgment

rendered the judgment void. We decline to address defendant's remaining arguments as he merely "incorporates by reference prior arguments" and offers no substantive arguments in support of his final issues. *See* N.C. R. App. P., Rule 28(b)(6) (Arguments on appeal must "contain the contentions of the appellant with respect to each issue presented. Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.").

Affirmed.

Judges CALABRIA and STEPHENS concur.

Report per Rule 30(e).